**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:17-cv-00072-MR**

| | |
|---|---|
| CHARLES N. LIGHT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>NANCY A. BERRYHILL, )<br>Acting Commissioner of Social )<br>Security )<br>)<br>Defendant. )<br>_____ ) | **MEMORANDUM OF<br>DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 10] and the Defendant's Motion for Summary Judgment [Doc. 13].

**I.     PROCEDURAL BACKGROUND**

The Plaintiff, Charles N. Light ("Plaintiff"), asserts that his ischemic heart disease status-post quintuple bypass surgery, degenerative joint disease of the bilateral shoulders, status-post avulsion fracture of the hip, anxiety disorder, major depressive disorder and post-traumatic stress disorder constitute severe physical and mental impairments under the Social Security Act (the "Act") rendering him disabled. On June 10, 2013, the Plaintiff filed an application for supplemental security income benefits under

Title XVI of the Act, alleging an onset date of October 20, 2011.[1] [Transcript ("T.") at 127]. The Plaintiff's application was denied initially and upon reconsideration. [T. at 165, 176]. Upon Plaintiff's request, a hearing was held on February 24, 2016, before an Administrative Law Judge ("ALJ"). [T. at 75, 78]. Present at the hearing were the Plaintiff; Cynthia Strong, Plaintiff's attorney; and a vocational expert ("VE"). [T. at 78]. On March 7, 2016, the ALJ issued a decision, wherein the ALJ concluded that the Plaintiff was not disabled. [T. at 78-95]. On January 9, 2017, the Appeals Council denied the Plaintiff's request for review of the ALJ's Decision, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-5]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907

---

[1] The Plaintiff also made a claim for disability insurance benefits ("DIB") under Title II of the Act. [T. 127]. The Plaintiff's Complaint requests judicial review of both his DIB claim and Title XVI claim. [Doc. 1]. However, the Plaintiff withdrew his claim for DIB at the hearing before the ALJ and amended his alleged onset date to October 20, 2011 for his remaining Title XVI claim. [T. 27, 78]. As such, the Court will not disturb the ALJ's decision dismissing Plaintiff's DIB claim.

F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

3

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability. 20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof,

which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. Id. Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative

work which exists in substantial numbers in the national economy. Id.; Hines v. Barnhart, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; Mascio, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. Id. Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at step five.

**IV. THE ALJ'S DECISION**

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since his alleged onset date, October 20, 2011. [T. at 80]. At step two, the ALJ found that the Plaintiff has severe impairments including ischemic heart disease, status-post coronary artery bypass grafting, hypertension, shoulder disorder, anxiety disorder, and post-traumatic stress disorder. [Id.]. At step two, the ALJ also addressed the Plaintiff's other impairments, including musculosketetal complaints, gout, abdominal injury and resultant surgical repair, which the ALJ found to be non-severe. [Id. at 81-85]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals

6

the Listings. [Id. at 85]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined in 20 C.F.R. § 416.967(b) except he cannot climb ladders, ropes or scaffolds, and he should avoid concentrated exposure to hazards. The claimant can perform other postural activity (climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling) on an occasional basis, and he can occasionally reach overhead with the bilateral arms. The claimant is limited to simple, routine, repetitive work.

[Id. at 86].

At step four, the ALJ identified Plaintiff's past relevant work as a dryer tender and plumber's assistant. [Id. at 93]. The ALJ observed, however, that because "the claimant has been limited to a range of light work that involves only simple, routine, repetitive tasks," the Plaintiff "would be unable to perform the requirements of his past relevant work." [Id.].

With the Plaintiff having carried his burden through the first four steps, the ALJ then assessed whether, at step five, the Commissioner could meet her burden of showing the availability of jobs Plaintiff is able to do, given his RFC. [Id. at 93, 94]. Based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, the Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including cafeteria attendant, marker, and building

cleaner. [Id. at 94]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from October 20, 2011, the alleged onset date, through March 7, 2016, the date last insured. [Id.].

## V. DISCUSSION[2]

In this appeal, the Plaintiff asserts that the ALJ erred in failing to provide a complete function-by-function analysis of Plaintiff's limitations in the RFC assessment as required by SSR 96-8p. [Doc. 11 at 4]. The Plaintiff also argues the ALJ erred in relying on testimony of the VE that conflicts with the Dictionary of Occupational Titles ("DOT") without first obtaining an explanation. [Id.]. The Plaintiff argues that these errors require remand. The Defendant, on the other hand, asserts that the ALJ's determinations on these issues were supported by substantial evidence and in accordance with the proper legal standards. [See Doc. 14]. The Court first turns to Plaintiff's assignment of error regarding the ALJ's RFC assessment.

Social Security Ruling 96-8p explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis,

---

[2] Rather than set forth a separate summary of the facts in this case, the Court has incorporated the relevant facts into its legal analysis.

including the functions" listed in the regulations.³ SSR 96-8p; see also Mascio v. Colvin, 780 F.3d 632, 636 (4th Cir. 2015) (finding that remand may be appropriate where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review) (citation omitted).

When a plaintiff's claim is based on mental health impairments, the Social Security Rules and Regulations require a much more in-depth review and analysis of the plaintiff's past mental health history. The Regulations make plain that "[p]articular problems are often involved in evaluating mental impairments in individuals who have long histories of … prolonged outpatient care with supportive therapy and medication." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00E. The Regulations, therefore, set forth a mechanism for this type of review and documentation, known as the "special technique," to assist ALJs in assessing a claimant's mental RFC. See SSR 96-8p; 20 C.F.R. §§ 404.1520a, 416.920a. The special technique "requires

---

³ The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching);" (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting;" and (3) other work-related abilities affected by "impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the 'paragraph B' and 'paragraph C' of the adult mental disorders listings." SSR 96-8p. Paragraph B of the listings provides the functional criteria assessed, in conjunction with a rating scale, to evaluate how a claimant's mental disorder limits his functioning. These criteria represent the areas of mental functioning a person uses in the performance of gainful activity.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. The Paragraph B criteria include restrictions in activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. Id. The ALJ uses the special technique to "evaluate the severity of mental impairments … when Part A of the Listing of Impairments is used." 20 C.F.R. § 404.1520a(a).

> Under the special technique, we must first evaluate your pertinent symptoms, signs, and laboratory findings to determine whether you have a medically determinable mental impairment(s)…. If we determine that you have a medically determinable mental impairment(s), we must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment(s) and document our findings[.]

---

[4] Like Paragraph B, the criteria described in Paragraph C also "describe impairment-related functional limitations that are incompatible with the ability to do any gainful activity." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00A. In this case, the ALJ found that the "evidence fails to establish the presence of the 'paragraph C' criteria." [T. at 86]. Plaintiff does not assign error to this finding. The Court, therefore, does not further address the Paragraph C criteria in this opinion.

20 C.F.R. § 404.1520a(b). With regard to mental health issues, "[t]he determination of mental RFC is crucial to the evaluation of your capacity to do [substantial gainful activity] when your impairment(s) does not meet or equal the criteria of the listings, but is nevertheless severe." 20 C.F.R. Pt. 404, Subptd. P, App. 1, § 12.00A. The RFC assessment is formulated in light of a claimant's physical and mental impairments. Rule 96-8p provides:

> The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form].

SSR 96-8p. Rule 96-8p further explains as follows:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of

each work-related activity the individual can perform
based on the evidence available in the case record.

Id. "Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." Id.

In this case, the ALJ failed to conduct any function-by-function analysis of Plaintiff's mental health limitations and work-related abilities prior to expressing his RFC assessment. [See T. at 84-6]. At step three, in deciding Plaintiff's mental impairments did not meet or medically equal the "Paragraph B" criteria in listing 12.04 (depressive, bipolar and related disorders) or 12.06 (anxiety and obsessive-compulsive disorders) the ALJ made findings on Plaintiff's limitations and difficulties relative to activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. [Id.]. The ALJ then noted:

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. <u>The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p)</u>. Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

12

[T. at 86 (emphasis added)].

By finding in step three that Plaintiff suffers from mild restriction in activities of daily living; mild difficulties in social functioning; and moderate difficulties in concentration, persistence or pace, the ALJ found that facts exist which correlate with a limitation on Plaintiff's ability to carry out the areas of mental functioning listed in Paragraph B. In formulating Plaintiff's RFC, however, the ALJ failed to explain whether these limitations translated into any *actual functional limitations*. It appears that the only mental limitation the ALJ sought to account for was Plaintiff's "moderate difficulties" in "concentration, persistence or pace" by limiting Plaintiff to "simple, routine and repetitive tasks." [T. at 86]. A restriction to simple, repetitive tasks, however, does not "account for a limitation in concentration, persistence or pace." Mascio, 780 F.3d at 638; see also Kitrell v. Colvin, No. 5:14-cv-163-RJC, 2016 WL 1048070, at *4 (W.D.N.C. March 6, 2016) (Conrad, J.); Scruggs v. Colvin, No. 3:14-cv-466-MOC, 2015 WL 2250890, at *5-6 (W.D.N.C. May 13, 2015) (Cogburn, J.). A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Mascio, 780 F.3d at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v.

13

Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citation omitted). See Patterson, 846 F.3d at 662 ("Without documentation of the special technique, it is difficult to discern how the ALJ treated relevant and conflicting evidence.").

As such, the Court must remand the case on this ground so that the ALJ may comply with the proper procedure for assessing the Plaintiff's mental impairments *before* expressing an RFC determination. See Mascio, 780 F.3d at 636; Patterson v. Comm'r Soc. Sec. Admin., 846 F.3d 656, 659 & 662 (4th Cir. 2017) ("[T]he weight of authority suggests that failure to properly document application of the special technique will rarely, if ever, be harmless because such failure prevents, or at least substantially hinders, judicial review."). Upon remand, it will be crucial that the ALJ carefully perform a function-by-function analysis of Plaintiff's mental limitations and work abilities, and thereafter "build an accurate and logical bridge from the evidence to his conclusion." Monroe, 826 F.3d at 189 (citation omitted). A

14

narrative assessment describing how the evidence supports each conclusion, as required by SSR 96-8p, is essential and should account for Plaintiff's limitation in concentration, persistence or pace; and social functioning and activities of daily living, if any; and include an assessment of whether Plaintiff can perform work-related tasks for a full work day. See Scruggs, 2015 WL 2250890, at *5 (applying Mascio to find an ALJ must not only provide an explanation of how a plaintiff's mental limitations affect her ability to perform work-related functions, but also her ability to perform them for a full workday).

In light of this decision remanding the case for further administrative proceedings, Plaintiff's remaining assignment of error need not be addressed but may be raised by him on remand.

## VII. CONCLUSION

For the reasons stated, the Court will remand this case for further administrative proceedings. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's mental residual functional capacity in accordance with the Social Security Rules and Regulations and evidencing use of the "special technique" set forth in 20 C.F.R. § 404.1520a and Rule 96-8p.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 10] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 13] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: July 23, 2018

Martin Reidinger
United States District Judge